IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                      19-CR-86

ANTHONY GERACE,

Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR MODIFICATION OF RELEASE CONDITIONS AND CROSS-MOTION FOR RECONSIDERATION OF DETENTION

The defendant, Anthony Gerace, through his attorney, Thomas J. Eoannou, Esq., filed a motion for modification of release conditions on behalf of the defendant. See Doc. No. 35. The UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Brendan T. Cullinane, Assistant United States Attorney, of counsel, hereby files the government's response to the defendant's motion and further moves this Court to reconsider its prior decision and requests the Court order the defendant be detained.

### I.      PROCEDURAL BACKGROUND

On January 28, 2019, the Court signed a criminal complaint charging the defendant with firearms offenses, namely, possession of firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c), and with making false statements and representations during the purchase of a number of firearms between October 30, 2014, and August 7, 2018. See Case No. 19-0mj-5007-MJR, Doc. No. 1.

On February 1, 2019, the parties appeared before this Court for a detention hearing. See Case No. 19-mj-5007, Doc. No. 4. As described herein, the government proffered relevant information regarding the defendant's history of domestic violence, drug dealing, use of drugs, false statements regarding his work history, possession of narcotics and firearms, false statements regarding his pistol permit application, and involvement in operating unlawful gambling. Id. At the conclusion of the detention hearing, the Court ordered the defendant released on conditions. See Case No. 19-mj-5007, Doc. Nos. 4 & 6.

On May 2, 2019, a federal grand jury returned a three-count indictment against the defendant. See Doc. No. 1. The indictment charged the defendant with violations of Title 21, United States Code, Sections 841(a)(1) and 856(a)(1) and Title 18, United States Code, Section 924(c)(1)(A)(i). Id.

On August 1, 2019, the defendant, through counsel, filed a motion to modify the conditions of release imposed by this Court. See Doc. No. 10. On August 2, 2019, the government filed a response in opposition, citing many of the reasons previously proffered at the detention hearing in this matter. See Doc. No. 11. On August 9, 2019, the defendant filed a reply brief. See Doc. No. 13.

On August 12, 2019, the parties appeared before this Court for oral argument regarding the defendant's motion; at the conclusion of the hearing, the Court denied the defendant's motion. See Doc. No. 15.

On October 24, 2019, the federal grand jury returned an eleven-count superseding indictment against the defendant.  See Doc. No. 21.  The indictment charged the defendant with violations of Title 21, United States Code, Sections 841(a)(1), 844(a), 856(a)(1), and 846, and Title 18, United States Code, Sections 924(a)(1)(A) and 924(c)(1)(A)(i).  Id.  Eight of the counts charged additional violations by the defendant; one of the counts, that is, Possession of Firearms in Furtherance of Drug Trafficking, in violation of Title 18, United States Code, Section 924(c), expanded the dates of the defendant's previously charged conduct.  Id.

On February 12, 2020, the defendant, through counsel, filed the instant motion to modify the conditions of release imposed by this Court.  See Doc. No. 35.  The defendant relies on the same reasons relied upon in the first modify the conditions of release, which the Court denied.  Id.  Additionally, the defendant has provided no additional information showing a change in circumstances that demonstrates that a modification, in the form of a reduction, to his conditions of release is necessary for the defendant.  Id.

Moreover, as described herein, the defendant's motion fail to address new information, including the Superseding Indictment in this matter and the indictment in United States v. Bongiovanni, 19-CR-227 (see Exhibit C), in this matter that have occurred since the first motion to modify his conditions of release.  The Superseding Indictment and related indictment both include relevant information regarding the defendant's background, conduct, and pending case before this Court.  Id.

As set forth below, the government respectfully requests that the Court deny the defendant's motion and further moves this Court to reconsider its prior decision and requests the Court order the defendant be detained.

## II.   ARGUMENT

On February 1, 2019, the government moved for detention on the basis of the applicable statutory presumption that the defendant presents a flight risk and danger[1], but also based upon proffered information regarding the following:

- Multiple instances of domestic violence-related complaints between the defendant and various ex-girlfriends;

- The defendant's history of dealing cocaine;

- The defendant's history of dealing bulk quantities of marijuana;

- The defendant's history of using and distributing opiate pills, which also included fake oxycodone pills that were later determined by the laboratory to be fentanyl pills[2];

- The fact he told probation he was working, whereas his live-in girlfriend told HSI Special Agent Curtis Ryan that the defendant sat on the couch and had not been working;

---

[1] The charges pending against the defendant triggered the rebuttable presumption that he is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3)(A) and (B); see also United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).

[2] Since the time of the detention hearing, the government has further confirmed the defendant's involvement in distributing opiates and that illness resulted from the defendant's distribution of such pills.

- The fact that a search of the defendant's residence resulted in the seizure of substantial quantities of THC oils, edible marijuana gummies, fourteen (14) firearms (including nine (9) rifles and five (5) handguns)[3],

- The fact that the defendant is involved in unlawful gambling, and that he had a former professional pro boxer who collected money owed to him. Law enforcement recovered gambling information (in the form of a ledger) from the defendant's residence during the search warrant; and,

- The fact that the defendant lied in his pistol permit application. (See Complaint at ¶ 16).[4]

### A.    The Defendant's Current Employment at Pharaoh's Gentlemen's Club

Following the February 1, 2019, detention hearing, the U.S. Probation Office ("USPO"), without input from or notice to the U.S. Attorney's Office, permitted the

---

[3] The defendant purchased several of these firearms unlawfully after the defendant lied on ATF form 4473 with regard to his drug usage. Indeed, on October 24, 2019, the federal grand jury returned the Superseding Indictment against the defendant; the superseding indictment charged the defendant with multiple counts of False Statement During Purchase of a Firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A). See Doc. No. 21.

[4] Since the detention hearing, the government has also determined the defendant lied in his pistol permit application when he stated:



The government has determined that the defendant's business, where he represented he was "self-employed" at a collection agency "Alliance Management," was apparently not a business at all, much less a legitimate business.

defendant to work as the "kitchen manager" at a strip club that the defendant attempts to again attempt to recast in this motion as a "restaurant."  Doc. No. 35 at 1 (¶ 3).  The strip club, Pharaoh's Gentlemen's Club in Cheektowaga, is owned by the defendant's brother, Peter Gerace, who is also a prior federally convicted felon.  Attached hereto and incorporated herein by reference as Exhibit A are various Buffalo News articles documenting violence, including a stabbing and shots fired, at the strip club and articles related to Peter Gerace's federal felony conviction.

Notwithstanding the information previously provided by the government, the defendant fails to address in his motion that on December 12, 2019, law enforcement executed a federal search warrant at his employer, that is, Pharaoh's Gentlemen's Club, for evidence related to violations of Title 18, United States Code, Sections 1962(c) (Racketeering), 1962(d) (Racketeering Conspiracy), 1956 (Money Laundering), and 1957 (Engaging in Monetary Transactions in Property Derived from Unlawful Activity), and Title 21, United States Code, Sections 843(b) (Use of Communication Facility to Facilitate the Commission of a Drug Felony), 844 (Possession of a Controlled Substance), 845(a)(1) (Maintaining Drug Involved Premises), and 846 (Narcotics Conspiracy).  See Exhibit B.

As indicated by the statutes itemized in the search warrant, law enforcement sought and received, from this Court after determining law enforcement presented probable cause, permission to search the premises for narcotics and weapons.  Id.  At that time, law enforcement recovered voluminous documents, records, and evidence, all of which law enforcement continues to review and analyze.  The defendant's continued employment at this

premises presents an opportunity for the defendant to engage in drug trafficking with coconspirators – the very statutes that the conditions of release are designed to prevent the defendant from which to continue to engage.

### B.    The Defendant's Identity as Coconspirator 2 in the Indictment of United States. v. Joseph Bongiovanni

Separately, on October 31, 2019, a federal grand jury returned an eleven-count indictment charging defendant Joseph Bongiovanni, a retired Drug Enforcement Administration Special Agent, with violations of Title 21, United States Code, Section 846 (Conspiracy to Distribute Controlled Substances), and Title 18, United States Code, Sections 371 (Conspiracy to Defraud the United States), 201(b)(2)(A) (Public Official Accepting a Bribe), 1001(a)(2) (False Statements to an Agency of the United States), and 1519 (Obstruction of Justice).  See Exhibit C, 19-CR-227-JLS.  The indictment in United States v. Bongiovanni alleges defendant's Bongiovanni's involvement, with other coconspirators, in a conspiracy to distribute controlled substances, including marijuana and cocaine.  Id. at 18. The government acknowledges that defendant Anthony Gerace is the person referenced throughout and identified in the indictment as Coconspirator 2.  Id. at 17, 25, and 26.

Based upon the defendant's motion, the defendant remains employed at Pharaoh's, which has been the subject of a recent search warrant for evidence related to narcotics and racketeering violations.  See Doc. No. 35.  In addition, the defendant is a referenced coconspirator of a former DEA Special Agent who is indicted on various narcotics and corruption charges.  See Exhibit C.  As a result, the defendant has received notice that a federal grand jury has investigation his criminal conduct, which includes evidence about his

criminal conduct with coconspirators. The defendant's release conditions should not be amended in any way so that the Court, through the USPO, has less information about the defendant. Instead, it is critical that the Court keep the conditions in place in order to continue monitoring the defendant's adherence to the conditions of release, particularly as it is clear that federal grand juries have reviewed and potentially continue to review the defendant's criminal conduct.

### C.     The Defendant's Involvement in an Unlawful Gambling Enterprise

As previously asserted by the government, since the time of the execution of the search warrant at the defendant's residence, the defendant falsely claimed that the money seized from his residence, namely $103,360.00, was from a football pool. Notwithstanding that the bundled money is indicative of drug dealing, and the rubber bands on it were old and frail indicating it had been there a while, the high stakes football squares table located during the search of the defendant's residence was from the Super Bowl a year earlier. Further, no individuals who purportedly trusted the defendant with their money to the tune of $103,360.00 have made claims for it. Nevertheless, the defendant's own claims tend to corroborate his involvement in illicit gambling endeavors, which is consistent with the government's prior proffer that multiple witnesses indicated the defendant had a former professional boxer who collected gambling debts for him.

### D.     The Defendant's Family Situation is Not a Reason to Modify the Release Conditions

The defendant's motion claims he takes care of his thirteen (13)-month-old son. See Doc. No. 35 at ¶ 3. However, upon information and belief, due to related issues in family

8

court, neither the mother of his child nor his son reside with the defendant. Indeed, the defendant's previous reply brief confirmed that neither the mother of his child nor his son reside with the defendant, but instead "stay[ed] at the defendant's residence" on certain days. See Doc. No. 13 at ¶ 16. Regardless, even if the defendant's son resides with the defendant, home detention does not prohibit the defendant from taking care of his son because the USPO could pre-approve, for example, the defendant's need to take his son to a doctor appointment:

( ✕ ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer.

Finally, as this Court has previously held, an individual's family situation is not a factor the Court should consider when evaluating release (including conditions) or detention.

### E.       The Defendant's Previous False Statements to the U.S. Probation Office

As the government previously addressed in both its response in opposition to the defendant's first motion to modify release conditions and at oral argument, the defendant made false statements to the USPO. In turn, the USPO incorporated the defendant's statements into its pre-trial services bail report and the Court relied upon this report in determining whether to detain the defendant or release him on conditions.

Specifically, the defendant lied to the USPO regarding his international travel. In particular, the defendant told the USPO that he "travel[ed] to Italy . . . approximately four years ago, and Cancun, Mexico for spring break approximately twenty years ago." (See Bail Report, prepared on Feb. 4, 2019, at 2.) However, HSI investigators reviewed the defendant's U.S.-Canada border crossing history, which showed the defendant entered and departed Canada as recently as February of 2016.

According to border crossing records, the defendant entered the United States from Canada at the Rainbow Bridge on February 21, 2016, at 1:31 p.m.  The defendant's entry into the United States from Canada occurred upon his return from a trip to Toronto with other individuals, several of whom are also involved in the use and distribution of cocaine and marijuana.  Law enforcement seized a corroborating text message from Peter Gereace's (the defendant's brother) cell phone between Peter Gerace (the defendant's brother) and defendant Joseph Bongiovanni, as follows:



In his bail report, the defendant represented he was the owner of "Dream Kitchen and Bath," and that if released from custody he could return to said employment.  That statement turned out to be false as the defendant did not return to said employment, but started working at his brother's strip club.  Furthermore, there are no federal tax filings related to the defendant's ownership of any business called "Dream Kitchen and Bath" despite the fact that the defendant reporting owning said business for the last "two and one-half years."  In fact, none of the businesses the defendant represented as his in his bail report ever filed federal taxes, or have a taxpayer identification number.

The defendant has mislead the Court and probation, just as he previously lied on multiple ATF 4473 forms during the purchase of firearms and when he filled out his New York pistol permit application.

**F.      The Release Conditions Should Not be Reduced as Recommended by the Defendant**

None of the conditions of release imposed and currently in place prevent the defendant from meeting people at his home, at his "work" at his brother's strip club, or at any point in-between.  Significantly, since the defendant's first motion to modify the release conditions, the grand jury returned a superseding indictment against the defendant and he has been named as coconspirator in a separate eleven-count indictment against a former law enforcement officer.  Thus, the government has even greater concerns now that the defendant will attempt to meet certain persons, including witnesses, as the defendant has become more aware of the increased criminal exposure he is facing from both the expanded indictment against him and his inclusion is another indictment.

Further, none of the conditions of release imposed and currently in place prevent the defendant from continuing to engage in criminal activity, which can easily be accomplished by speaking with others in person, through the mail, or via electronic devices in furtherance of his criminal endeavors.  As the government's prior proffer and investigation make clear, the defendant has other cohorts and confederates he was able to work with for at least a decade selling drugs and in furtherance of his unlawful gambling endeavors.  Of equal concern to the government, the defendant is currently employed at a premises in which law enforcement recently searched for evidence of, among other things, narcotics – which are the very same

11

violations the defendant is alleged to have committed.  Thus, the conditions currently in place are not preventing the defendant from continuing to engage easily in criminal activity.  None of the defendant's conditions restrict that activity from continuing, and the current conditions are insufficient to restrict conspiratorial criminal activity.

The defendant's motion also fails to demonstrate that he is unable to work, attend religious functions, attend court proceedings, attend medical appointments, or even care for his child.  See Doc. No. 35.  Instead, the defendant requests that this Court amend the release conditions simply because the defendant "has abided by . . . the terms and conditions of his release."  Id. at ¶ 3.  The defendant, though, should not be rewarded for obeying this Court's Order Setting Conditions of Release; rather, notwithstanding the government's request for the Court to reconsider detention of the defendant, because the defendant has apparently not had any violations, the Court should not discontinue an Order that is apparently working as it should.

As noted above, the defendant misled probation and the Court.  While, according to the defendant, his probation officer has told him probation would consent to the modification, as of this writing, nobody from probation has sought any input from the government.

The investigation into the defendant continues on multiple fronts, as indicated by the return of a Superseding Indictment in his case and the return of an Indictment in the case of United States v. Joseph Bongiovanni.  The government acknowledges that it is possible that a grand jury may lodge more and various types of additional charges against the defendant.

12

As such, the government strongly opposes any "step down" of the defendant's level of supervision. Rather, based upon the foregoing, the government submits the Court reconsider its prior decision and order the defendant detained.

## CONCLUSION

Based upon the information submitted herein, the defendant's motion to reduce his release conditions should be denied. The government respectfully requests the Court to reconsider its prior decision and detain the defendant. At a minimum, the defendant should not work at Pharaoh's Gentlemen's Club as a "kitchen manager."

DATED: Buffalo, New York, February 24, 2020.

JAMES P. KENNEDY, JR.
United States Attorney

BY:    s/BRENDAN T. CULLINANE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5875
Brendan.Cullinane@usdoj.gov