IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.               19-CR-86

ANTHONY GERACE,

      Defendant.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO ADJOURN SENTENCING

The UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Brendan T. Cullinane, Assistant United States Attorney, of counsel, hereby files the government's response in opposition to the defendant's motion to adjourn the sentencing scheduled in this matter and requests the Court deny the defendant's motion. See Doc. No. 58.

### I.  PROCEDURAL BACKGROUND

On January 28, 2019, the Court signed a criminal complaint charging the defendant with firearms offenses, namely, possession of firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c), and with making false statements and representations during the purchase of a number of firearms between October 30, 2014, and August 7, 2018. See Case No. 19-0mj-5007-MJR, Doc. No. 1.

On February 1, 2019, the parties appeared before this Court for a detention hearing. See Case No. 19-mj-5007, Doc. No. 4. As described herein, the government proffered relevant information regarding the defendant's history of domestic violence, drug dealing, use of drugs, false statements regarding his work history, possession of narcotics and firearms, false statements regarding his pistol permit application, and involvement in operating unlawful gambling. Id. At the conclusion of the detention hearing, the Court ordered the defendant released on conditions. See Case No. 19-mj-5007, Doc. Nos. 4 & 6.

On May 2, 2019, a federal grand jury returned a three-count indictment against the defendant. See Doc. No. 1. The indictment charged the defendant with violations of Title 21, United States Code, Sections 841(a)(1) and 856(a)(1) and Title 18, United States Code, Section 924(c)(1)(A)(i). Id.

On October 24, 2019, the federal grand jury returned an eleven-count superseding indictment against the defendant. See Doc. No. 21. The indictment charged the defendant with violations of Title 21, United States Code, Sections 841(a)(1), 844(a), 856(a)(1), and 846, and Title 18, United States Code, Sections 924(a)(1)(A) and 924(c)(1)(A)(i). Id. Eight of the counts charged additional violations by the defendant; one of the counts, that is, Possession of Firearms in Furtherance of Drug Trafficking, in violation of Title 18, United States Code, Section 924(c), expanded the dates of the defendant's previously charged conduct. Id.

On October 27, 2020, the defendant appeared before this Court and entered a plea of guilty to Count 7 of the Superseding Indictment (Possession of Firearms in Furtherance of Drug Trafficking). See Doc. No. 53. At that time, the Court scheduled the sentencing for February 24, 2021, at 10 a.m. See Doc. No. 54.

On February 11, 2021, the defendant, through counsel, filed the instant motion to adjourn the sentencing scheduled for February 24, 2021. See Doc. No. 58. The defendant relies on the mere possibility that the defendant "would be at increased risk of exposure to COVID-19." Id. at 3 (¶ 9). However, the defendant fails to offer any information that the Bureau of Prisons is unable to address any concerns for the defendant or any other inmate. As such, the defendant's motion should be denied.

As set forth below, the government respectfully requests that the Court deny the defendant's motion and requests that the parties remain scheduled to appear before this Court for sentencing on February 24, 2021.

## II. ARGUMENT

### A. The Defendant's Motion to Adjourn Sentencing Should be Denied.

The defendant requests that the Court adjourn sentencing because of his concerns about the coronavirus. See Doc. No. 58. The defendant, though, has failed to address the measures instituted at the BOP to prevent the spread of the coronavirus. Id. Instead, the government has provided information regarding how the BOP has implemented a coronavirus action plan to minimize the risk of transmission into and throughout its facilities.

3

Finally, the defendant's conviction and background, including plea for possessing firearms in furtherance of drug trafficking, all demonstrate that the defendant's sentencing should not be adjourned and the motion should be denied.

1. **The Bureau of Prisons is Equipped and Able to Address Any and All of the Defendant's Concerns About COVID-19.**

The defendant's motion states that because the defendant "suffers from asthma and sleep apnea[,]" the defendant requests that the Court adjourn sentencing. See Doc. No. 58 at 3 (¶ 11). The government has reviewed the U.S. Probation Office's Presentence Investigation Report ("PSR") drafted in this case, which states that the defendant claimed "that when he was younger, he was diagnosed with asthma." See Doc. No. 56 at 15 (¶ 61). In addition, the PSR indicates that the U.S. Probation Office reviewed medical documentation stating that the defendant has received a diagnosis for sleep apnea. Id.

Based on the Centers for Disease Control and Prevention's research and representations, neither asthma nor sleep apnea are chronic medical conditions that present "serious physical or medical condition[s] . . . that substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." USSG § 1B1.13 cmt. n.1(A)(ii)(I).[1] The government acknowledges that a diagnosis of "moderate-to-severe" asthma *might* increase your risk for

---

[1] See Centers for Disease Control and Prevention, "People With Certain Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited on February 16, 2021).

4

severe illness from COVID-19[2]; however, the defendant has not put forth any documentation to this Court indicating that the defendant suffers from even moderate asthma. See Doc. No. 58. Rather, as previously stated herein, the only information provided to the government is the defendant's lone statement to the U.S. Probation Office about an asthma diagnosis at an undisclosed time by an unnamed medical practitioner when he was apparently "younger." See Doc. No. 56 at 15 (¶ 61).

The defendant appears to rely on the mere possibility that he may be infected with COVID-19 while incarcerated. See Doc. No. 58. The defendant, though, has not established that he is more likely to develop COVID-19 while incarcerated. Id. Rather, the Department of Justice ("DOJ") is taking aggressive action to slow and prevent the spread of COVID-19 within federal prisons.

The BOP has instituted significant measures all BOP facilities to mitigate the spread of COVID-19 among the inmates and staff. In particular, every BOP facility has adopted the BOP's Modified Operations[3], as follows:

- Every facility has suspended social visitations;
- Every facility has suspended all volunteer visits;
- Every facility's tours have been suspended;
- The BOP suspended all, with few exceptions, in-person training;

---

[2] See Centers for Disease Control and Prevention, "People With Certain Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited on February 16, 2021).
[3] See BOP Modified Operations, available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited on February 16, 2021).

5

- The BOP suspended all non-essential official staff travel;

- Every facility has afforded additional minutes per month, at no charge, to inmates to help compensate for the suspension of social visits;

- All non-social visits between inmates and visitors are non-contact and social distancing between inmates and visitors is enforced, either via the use of plexiglass, or similar barriers, or physical distancing (i.e., 6 feet apart);

- Visitors are symptom screened and temperature checked;

- Visitors who are sick or symptomatic will not be allowed to visit;

- Every facility requires both inmates and visitors to wear appropriate face coverings at all times and to perform hand hygiene both before and after the visit;

- Every facility disinfects all tables, chairs, and other high-touch surfaces between visitation groups;

- Every facility cleans all areas, including the lobbies, following the completion of any visitation;

- In addition to screening and testing inmates, every facility conducts temperature checks and COVID-19 screening for staff, contractors, and other visitors;

- Every facility has denied access to the building for those with those who register a temperature of 100.4° Fahrenheit or higher;

- As much as possible, every facility has assigned staff to the same posts and not rotating posts, as an additional measure to mitigate the spread of the virus;

- Every facility has incorporated every CDC recommended precaution into the facility's revised visiting procedures;

- Every facility has accommodated to the extent possible inmates' telephone calls and/or video conferencing with outside counsel;

- Every facility has continued to accommodate, with standing guidance, in-person legal visits upon request, based on local resources, and has mandated that preventative protocols similarly be followed by the inmates and counsel;

- Every facility has adopted the BOP's modified operations to maximize social distancing in our facilities, as much as practicable, which includes limiting inmates' movements both within the facility and between facilities to prevent congregate gathering and maximize social distancing;

- Every facility has continued to operate essential inmate work details, such as Food Service, with appropriate screening;

- Every facility conducts inmate movements in small numbers for the limited following purposes: commissary, laundry, showers three times each week; telephone access, to include legal calls; and, access to TRULINCS;

- Every facility permits inmate movement, when necessary, for the provision of required mental health or medical care;

- Every facility has adopted the BOP's Modified Operations plan, which includes symptom screens, temperature checks, and testing, at the time of entries, receptions, and discharges of all new intakes to an institution, including voluntary surrenders, BOP-to-BOP transfers, or transfers from outside the BOP system;

- Every facility has placed inmates who arrive symptomatic and/or test positive in medical isolation;

- Every facility has placed inmates who arrive asymptomatic and test negative in quarantine;

- If an inmate becomes symptomatic during quarantine, the facility retests the inmate and places the inmate in medical isolation immediately;

- If an inmate remains asymptomatic, the facility keeps the inmate in quarantine for at least 14 days;

- The facility will not admit anyone with a known positive COVID-19 test, or who has fever or symptoms, on a transport; and,

- In addition to screening and testing inmates, every facility conducts temperature checks and COVID-19 screenings for staff, contractors, and other visitors to the facility and has denied access to those who register a temperature of 100.4° Fahrenheit or higher denied access to the building.

While there are instances of the presence of the coronavirus at BOP facilities, just as there are throughout the United States (and even the world), the DOJ has devoted significant resources and taken decisive action to ensure that inmates are maximally protected from COVID-19 exposure. The PSR indicates that, as of January 2021, the defendant resides in Clarence, New York, with his partner and their children. See Doc. No. 56 at 2, 15 (¶ 59). As of this filing, Erie County, New York, in which Clarence sits, has reported 61,620 confirmed cases of the coronavirus; Clarence, New York has reported 1,354 confirmed cases of the coronavirus.[4] Viewing the protective measures taken by the BOP, the defendant has not established that he is more likely to develop COVID-19 while incarcerated than if he remains out of custody with his partner and their children in Erie County, New York.

Lastly, the defendant has not established that any BOP facility is unequipped to provide appropriate medical treatment if he were to become ill. See United States v. Gagne, No. 3:18-cr-242, 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying a compassionate release motion where defendant failed to show "that the BOP cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); see also United States v. Gileno, No. 3:19-CR-161, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020) (denying a compassionate release motion where defendant did not show that BOP was unable to manage the spread of COVID-19 and/or treat him effectively should be become infected). In fact, at least one Court, entertaining a COVID-19-based motion for release under 28 U.S.C. § 2254, noted that prison officials may actually be uniquely situated to address the spread of

---

[4] See Erie County, NY – Confirmed COVID-19 Cases (total cases, graphs and cluster zone map updated 2/16/2021, available at, https://erieny.maps.arcgis.com/apps/opsdashboard/index.html#/dd7f1c0c352e4192ab162a1dfadc58e1 (last viewed February 16, 2021).

communicable diseases. See Peterson v. Diaz, No. 2:19-cv-01480, 2020 WL 1640008, at *2 (E.D. Ca. April 2, 2020). The government acknowledges that these previously cited cases addressed motions for compassionate release; in this case, although the defendant is not yet in custody, the cases set forth herein demonstrate that Courts have found that similarly situated persons – that is, persons who do not want to be in BOP custody – have similarly erred in their representations to the Courts about the BOP's ability to address medical issues and the coronavirus.

As such, the defendant has failed to demonstrate that the BOP is not equipped to address the defendant's – or any other inmate's – needs regarding any medical issues related to the coronavirus.

### 2. **Following the Defendant's Plea of Guilty, the Court Scheduled Sentencing to be Held at a Reasonable Time and Therefore Sentencing Should Not be Adjourned.**

Previously, on February 1, 2019, the government moved for detention on the basis of the applicable statutory presumption that the defendant presents a flight risk and danger[5], but also based upon proffered information regarding the following:

- Multiple instances of domestic violence-related complaints between the defendant and various ex-girlfriends;

- The defendant's history of dealing cocaine;

- The defendant's history of dealing bulk quantities of marijuana;

---

[5] The charges pending at that time against the defendant triggered the rebuttable presumption that he was a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3)(A) and (B); see also United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).

- The defendant's history of using and distributing opiate pills, which also included fake oxycodone pills that were later determined by the laboratory to be fentanyl pills[6];

- The fact he told probation he was working, whereas his live-in girlfriend told HSI Special Agent Curtis Ryan that the defendant sat on the couch and had not been working;

- The fact that a search of the defendant's residence resulted in the seizure of substantial quantities of THC oils, edible marijuana gummies, fourteen (14) firearms (including nine (9) rifles and five (5) handguns)[7];

- The fact that the defendant is involved in unlawful gambling, and that he had a former professional pro boxer who collected money owed to him. Law enforcement recovered gambling information (in the form of a ledger) from the defendant's residence during the search warrant; and,

- The fact that the defendant lied in his pistol permit application. (See Complaint at ¶ 16).[8]

The Court denied the government's motion and permitted the defendant to remain out of custody. See Case No. 19-mj-5007, Doc. Nos. 4 & 6.

---

[6] Since the time of the detention hearing, the government has further confirmed the defendant's involvement in distributing opiates and that illness resulted from the defendant's distribution of such pills.

[7] The defendant purchased several of these firearms unlawfully after the defendant lied on ATF form 4473 with regard to his drug usage. Indeed, on October 24, 2019, the federal grand jury returned the Superseding Indictment against the defendant; the superseding indictment charged the defendant with multiple counts of False Statement During Purchase of a Firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A). See Doc. No. 21.

[8] Since the detention hearing, the government has also determined the defendant lied in his pistol permit application when he stated:



On October 27, 2020, the defendant appeared before this Court and entered a plea of guilty to Count 7 of the Superseding Indictment (Possession of Firearms in Furtherance of Drug Trafficking). See Doc. No. 53. As described therein, beginning in or before 2006, until approximately January 28, 2019, the defendant possessed with intent to distribute, and distributed, marijuana, delta-9 tetrahydrocannabinol (THC), cocaine, hydrocodone, and other federally controlled substances.

Specifically, on January 28, 2019, law enforcement executed a federal search at the defendant's residence in Clarence, New York. At that time, law enforcement recovered quantities of marijuana and THC intended for distribution by the defendant, as well as fourteen (14) firearms and numerous rounds of ammunition for the various firearms. The defendant possessed the firearms and ammunition in close proximity to the controlled substances, and also in close proximity to $103,360 in U.S. currency, the majority of which was rubber-banded and sealed in plastic.

In addition, law enforcement recovered a liquid (in a syringe inside a suit jacket) that was later tested and determined to be steroids, Andro test 250 with syringe, and a sniffer with cocaine residue. In the residence's basement, law enforcement found several hockey-style bags with bulk quantities of marijuana in vacuum sealed plastic wrapping totaling 7.9 kilograms, marijuana wrappings with residue, boxes of marijuana THC products including 991 THC vape cartridges, and 394 packets of edible marijuana gummies. A conservative estimate of the total street value of the marijuana and THC marijuana products (vape cartridges and gummies) recovered from the basement is approximately $98,850. The

marijuana and marijuana products were in proximity to nine firearms and ammunition, including: a .22 caliber rifle; two Steven's Favorite rifles; a Sears Model 200 20 gauge shotgun; a Stevens .22LR Model 62 rifle; a Smith & Wesson MP15; a Browning Auto 12 gauge shotgun; a Browning Gold Deer Hunter Shotgun; a Tikka .243 Model T3 rifle.

Finally, law enforcement found a loaded Sig Sauer P365 in the kitchen, ledgers, 562 rounds of various ammunition, and firearm accessories.

As such, the defendant's entry of a plea of guilty is consistent with his criminal conduct regarding violations of both federal drug and firearms convictions. Based on the defendant's criminal conduct and entry of a plea, the defendant is properly scheduled for sentencing in this pending matter.

## **CONCLUSION**

Based upon the information submitted herein, the defendant's motion to adjourn his sentencing should be denied. In particular, the defendant has failed to present any information to the Court to demonstrate that his sentencing should be delayed for any reason. The BOP is more than equipped to handle any medical need of the defendant's and the BOP has demonstrated an ability to implement and facilitate best practices regarding the prevention and spread of the coronavirus. As a result, the government respectfully requests the Court to order the parties to appear, as scheduled, for the sentencing in this matter.

DATED: Buffalo, New York, February 16, 2021.

                                          JAMES P. KENNEDY, JR.
                                        United States Attorney

BY:   s/BRENDAN T. CULLINANE
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York  14202
       716/843-5875
       Brendan.Cullinane@usdoj.gov